UNITED STATES, Appellee

v.

John H. REYNOLDS, Staff Sergeant
U.S. Air Force, Appellant.

No. 93–0632.
CMR No. S28520.

U.S. Court of Military Appeals.

Argued March 17, 1994.

Decided Sept. 15, 1994.

Appellant: *Captain Robert I. Smith* (argued); *Colonel Jay L. Cohen* (on brief); *Colonel Terry J. Woodhouse.*

Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Jeffery T. Infelise* and *Captain Jane M.E. Peterson* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion*

COX, Judge:

Appellant, while stationed at Soesterberg Air Base in the Netherlands, mailed two grams of marijuana in the form of hashish to his brother in the United States. Appellant pleaded guilty to one specification of distribution of hashish, in violation of Article 112a, Uniform Code of Military Justice, 10 USC

§ 912a. A special court-martial composed of officer members sentenced him to a bad-conduct discharge and reduction to the lowest enlisted pay grade. Following a post-trial session under Article 39(a), UCMJ, 10 USC § 839(a), addressing the possibility of unlawful command influence and juror misconduct, the convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated January 22, 1993.

We granted review to consider: (1) the possibility of command influence arising from the convening authority's expression of dissatisfaction with past court-martial sentences in the presence of four potential members of appellant's panel; and (2) the potential of command influence upon junior members of the court-martial panel by the actions of the president, who was present when the convening authority expressed his dissatisfaction with prior sentences.[1]

## FACTS

### A. Pretrial

After the military judge entered findings of guilty pursuant to appellant's pleas and after the members assembled, trial counsel called the court's attention to comments made at a morning briefing by the Commander of the 32d Tactical Fighter Group, who was the special court-martial convening authority. There were 15 to 20 people at the briefing, 4 of whom were potential members of the court-martial panel in appellant's case. The staff judge advocate, Captain Michael D. Murphy, was present at the meeting and testified as follows:

We have a regular Group Standup at 0900 every morning. At this morning's Standup, at 0900, the Commander of the 32d Tactical Fighter Group made some comments concerning court-martial membership. There were four of the court members on this court present in the room and I think it's important to bring the—both the comments by the Commander as well as my response to those comments to the attention ... [of] the court, as well as the parties.

\* \* \*

This morning the way the order of business goes in Standup is that the Commander will generally go around the table and when everyone else is finished speaking he will make comments on a variety of subjects. This morning the Commander said he wanted to make sure that everybody knew what his attitude was about service on court[s]-martial, that he was to an extent dissatisfied with the results of courts that occurred over the last couple of years. He then proceeded to talk about some thoughts about what his policy was, and at that point he—I sit at the other end of the table ... about eight feet away from the Commander. He looked down at me and said, "Now, stop me if I've gone too far," and at that point I said, "Sir, you have gone too far, and let me add some comments, please."

\* \* \*

I then interrupted the Commander and said, "Sir, I think it's important, and I think it's important for everybody in the room to know that what the Commander expects when you're appointed, or when you're named to a court-martial panel, is that you will bring your common sense,

1. The granted issues are:

I

WHETHER THE SENTENCE SHOULD BE DISAPPROVED BECAUSE THE CONVENING AUTHORITY'S STATEMENTS, MADE WHILE THE COURT WAS HOLDING AN ARTICLE 39(A) SESSION AND IN THE PRESENCE OF FOUR OF THE COURT MEMBERS, EXPRESSING HIS DISSATISFACTION WITH THE RESULTS OF PRIOR COURTS–MARTIAL AT SOESTERBERG AB INFUSED UNLAWFUL COMMAND INFLUENCE INTO THIS CASE.

II

WHETHER THE SENTENCE SHOULD BE DISAPPROVED BECAUSE THE PRESIDENT OF THE COURT–MARTIAL, WHO HAD BEEN SUBJECTED TO COMMENTS OF THE CONVENING AUTHORITY REGARDING HIS DISSATISFACTION WITH THE RESULTS OF RECENT COURTS–MARTIAL, EXERTED SUPERIORITY OF RANK IN THE SENTENCING DELIBERATIONS TO INCREASE THE SEVERITY OF APPELLANT'S SENTENCE.

knowledge of human nature and the ways of the world into the courtroom and nothing else." I intentionally said those words because I knew that they would be instructions that the military judge would later give the court members.

I went on to say that when anyone is appointed to a court panel at Soesterberg Air Base that the Commander's intention is that they should bring nothing short of full, fair and impartial integrity into the courtroom and make decisions based solely on what they hear in the courtroom. That was about the end of the discussion. . . .

The military judge proceeded to question the four potential members who were present at the morning briefing. First, he called Major Smith, who recalled the statements of both the commander and Captain Murphy. Regarding the commander's comments, Major Smith stated:

> Personally I didn't get any message from it. I have sat on a board before. I do have officers that work for me now that have never sat on one before and I took it in—to discuss, you know, sitting on a court and your responsibilities as a court member—with the junior officers that work for me. That's how I took it. I didn't take it in any other way.

Major Smith assured the judge she would not be influenced by the commander's comments and that her decisions as a member would be made with a fair and open mind based on the evidence presented in court.

Next, the military judge called Major Schmidt. The judge asked Major Schmidt whether he thought the commander was sending a message to the potential members as to the results they should reach in this court-martial. Major Schmidt responded:

> No, not at all. I—I don't know how to say this except that I feel like military professionalism comes in here, that being appointed on the orders and stuff—to where, if I told these folks that I'm going to be fair and honest without any prejudice one way or the other, that's what I intend to do. So, I don't know how—you know, anything said to me, how that's going to affect anything.

Like Major Smith, Major Schmidt asserted he could arrive at decisions based solely on the evidence presented in court.

Captain Kolenda also recalled the commander indirectly expressing dissatisfaction with the results of courts-martial in the past. When asked how the commander's comments affected him, Captain Kolenda replied:

> Well, I've come through this process several times. This is not my first court-martial and although I thought it was an inappropriate comment—this is my personal opinion—I didn't feel like I was affected. I've been here three years. I know Colonel Hagelin [the Commander] fairly well. He is very direct about things. And I—you know, I—I knew where he was coming from, but I kind of shrugged it off. I just accepted that as—you know, that's his—that's his way. No, I did not—I don't think I have any formed opinion, other than just the reaction of what he was saying.

Captain Kolenda testified that the commander's remarks would not affect his performance of his duties as a fair and open-minded member.

Captain Ballard was the final member called for *voir dire*. He recalled the commander saying, in effect, that anyone involved with drugs in any way should be made "a civilian as soon as possible" and that generally, when someone is court-martialed, there are circumstances warranting discharge. Captain Ballard surmised the commander was trying to enforce "his personal drug policy." Ballard testified:

> I was surprised by the comments. I—after the announcement was made later that we were, in fact, going to be sitting on the court, I did think about it, and I thought—I don't happen to share his opinion. I—I would hope that we could all come in here with an open mind and know that there are general policies, but . . . each case might have different circumstances that would warrant, you know, the whole spectrum of punishment that we discussed—which goes from zero punishment all the way up to the maximum.

Captain Ballard, too, considered himself capable of making decisions solely based on the evidence presented in court.

There were no challenges for cause, but the defense exercised a peremptory challenge to excuse Captain Kolenda. The members of appellant's court-martial panel ultimately sentenced him to a bad-conduct discharge and reduction to E–1.

### B. Post-trial

Pursuant to RCM 1102, Manual for Courts–Martial, United States, 1984, a post-trial Article 39(a) session was held to investigate the possibility of unlawful command influence during sentencing deliberations. Captain John E. Taylor, who served as a member on appellant's court-martial panel, testified that he felt the president of the panel, Major Smith, was "pushing ... for [a] particular sentence." According to Captain Taylor, when Major Smith referred to another member of the court as "Captain," it was clear her "tone of voice" was intended to impress upon the captain his inferiority in rank. Similarly, when one member discussed his view of an appropriate sentence, Major Smith accused him of "condon[ing] the use of drugs" in the Air Force. Captain Taylor thought Major Smith pressured the panel to reach a certain result, implying if they did not, they "were not doing [their] jobs."

Following Captain Taylor's testimony, defense counsel stated his client "would waive

any further investigation and any finding that would result." Although defense thought there might be "ample basis" to pursue the possibility of unlawful command influence, appellant declined further inquiry into the matter because of the possibility that, upon a rehearing, he could receive "confinement in lieu of the bad-conduct discharge." Defense counsel stated his "client [did] not want to spend a day in prison." Appellant's wife was pregnant at the time of his court-martial, and he was eager to locate a house and secure a job to support his family.[2] The military judge found appellant "knowingly, and voluntarily, and consciously waived his right to any further investigation" into the possibility of command influence on his court-martial, his right to a finding by the military judge, and his potential right "to a sentence rehearing." Thus, the military judge reached no conclusions as to the propriety of Major Smith's alleged comments.

### ISSUES

### I

The first granted issue asks whether appellant's sentence should be set aside because of the commander's statement to the four potential panel members regarding his opinion of prior sentences. We agree with the Court of Military Review that the commander's remarks were inappropriate.[3] When the issue of command influence has been raised, we will go to great lengths to

---

2. When the military judge asked appellant why he chose not to "pursue the matter" of potential command influence and "run the risk of a rehearing" on sentence, appellant responded:

   Well, Your Honor, I've been getting my resumes together, and, like I said, my life has been on hold for the last four months. And with my wife being pregnant, I can't do her any good in jail, and at E–1 pay I can't very well support us. And I need to find a house, I need to find a job, and that right now is my most important issue.

3. Article 37(a), Uniform Code of Military Justice, 10 USC § 837(a), states:

   No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the

findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. The foregoing provisions of the subsection shall not apply with respect to (1) general instructional or informational courses in military justice if such courses are designed solely for the purpose of instructing members of a command in the substantive and procedural aspects of courts-martial, or (2) to statements and instructions given in open court by the military judge, president of a special court-martial, or counsel.

ensure beyond a reasonable doubt that the decisions of the members were not tainted by illegal command influence. *United States v. Levite*, 25 MJ 334, 338 (CMA 1987); *United States v. Thomas*, 22 MJ 388, 394 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, there must be more than a mere appearance of evil to justify appellate action. *United States v. Allen*, 33 MJ 209, 212 (CMA 1991), *cert. denied*, ––– U.S. –––, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). Prejudice is not presumed. The issue of unlawful command influence must be alleged with particularity and substantiation. For an accused to be entitled to appellate action on his case, the unlawful influence must be the proximate cause of the unfairness of his court-martial. Each case should be considered on its own facts. 25 MJ at 341 (Cox, J., concurring).

Majors Smith and Schmidt, and Captains Kolenda and Ballard all testified that their decisions as members would not be influenced by the commander's opinion of prior sentences, but they would arrive at decisions in appellant's case solely on the basis of evidence presented at appellant's court-martial. Moreover, appellant made no challenges for cause. Captain Kolenda was the only potential member excused, and he was excused by appellant's peremptory challenge. The military judge instructed the members not to consider anything other than matters "admitted into evidence." The members are presumed to have followed these instructions. *United States v. Pollard*, 38 MJ 41, 52 (CMA 1993), *citing United States v. Ricketts*, 1 MJ 78, 82 (CMA 1975). Moreover, having "waive[d] any further investigation and any finding that would result" on the ground that he did not want his sentence altered, appellant is not in a good position to argue that he was prejudiced as to sentence. We are not persuaded the commander's comments proximately caused the members to award appellant a more severe sentence than he would otherwise have received. We are convinced, beyond a reasonable doubt, that appellant's sentence was not tainted by undue command influence.

## II

■ Next, we consider whether appellant's sentence should be set aside because the president of the court-martial allegedly exerted superiority in rank during sentencing deliberations to increase appellant's sentence. As noted, appellant affirmatively waived further inquiry and any findings or rulings on the matter during the Article 39(a) session. *But cf. United States v. Sparrow*, 33 MJ 139 (CMA 1991) (trial defense counsel failed to object but this Court did not apply the rule of waiver because of its special interest in the possibility of command influence). Unlike the preceding issue, however, it is not even clear that Major Smith's alleged comments exceeded the bounds of that open and robust expression of opinion expected of court-members. In any event, appellant's express and voluntary waiver precluded further inquiry. Under these circumstances, we are satisfied beyond a reasonable doubt that appellant has suffered no prejudice as to his adjudged sentence.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge CRAWFORD concurs.

WISS, Judge (concurring in part and in the result):

## I

I agree with the lead opinion's treatment and resolution of Issue I. That opinion quite properly labels the commander's remarks in question here as "inappropriate." 40 MJ at 201. They were at least that. At the same time, the record reflects that the staff judge advocate laudably acted promptly to cut the remarks off at the pass in order to prevent further damage and that, after the bright light of day had been shined on the fact of the improper comments and on their potential effect on appellant's court-martial, all involved were convinced that the four members in question could continue to sit and to act impartially. I am similarly convinced beyond a reasonable doubt. *See United States v. Thomas*, 22 MJ 388, 394 (CMA

1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

When unlawful command influence is established, it must be roundly and unquestionably condemned. When, however, there is no discernible prejudice to a particular accused, no action is warranted that addresses the findings or sentence in that case. *Id. Accord United States v. Allen,* 33 MJ 209 (CMA 1991), *cert. denied,* — U.S. —, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *United States v. Cruz,* 25 MJ 326 (CMA 1987). There must be harm to be redressed before a remedy is appropriate. I agree with the lead opinion that, thanks to the staff judge advocate and the thorough voir dire of the members on the issue, there is no harm to be redressed here.

## II

As to Issue II, however, I find that I am not in agreement with any of my colleagues, so I must write briefly to explain my vote to affirm the decision below in rejection of appellant's claim of reversible error.

Judge Gierke in dissent unequivocally concludes that advice to appellant was erroneous that he might suffer some portion of confinement at a sentence rehearing in lieu of the adjudged bad-conduct discharge. He cites *Waller v. Swift,* 30 MJ 139 (CMA 1990), in support. 40 MJ at 207. I infer that the Chief Judge in dissent agrees with Judge Gierke's view of this advice.

I do not read *Waller* in this way, however. In fact, I believe that a careful reading of *Waller,* including the cases cited and discussed therein—such as *United States v. Hodges,* 22 MJ 260 (CMA 1986); *United States v. Darusin,* 20 USCMA 354, 43 CMR 194 (1971); *United States v. Brown,* 13 USCMA 333, 32 CMR 333 (1962); and *United States v. Prow,* 13 USCMA 63, 32 CMR 63 (1962)—actually underlines the *wisdom* of defense counsel's advice to appellant that he might lawfully be adjudged some period of confinement as a less severe punishment of the bad-conduct discharge. At best, *Waller v. Swift, supra,* rationally leaves open the possibility that, under the circumstances of this case, any confinement would be found to be more severe than a punitive discharge; it does not, however, assure such a conclusion.

In this light, then, the portion of the record quoted extensively by the Chief Judge (40 MJ at (204–206)) leaves no room to doubt that appellant's waiver was both knowing and intelligent. He knew exactly what he was doing and why he was doing it.

That leads, however, to the troublesome question posed by the Chief Judge concerning whether such a waiver should be permitted where it would in effect turn off the investigative light that is in search of command influence. There is something to be said for the notion that command influence is such an insidious evil—one that, if unrooted and uncorrected, would threaten to rot from within both the reality and the perception of the integrity of the military justice system—that the institutional interest in pursuing it goes beyond one accused's own perception of his private benefit from not uncovering it. *See generally Weiss v. United States,* — U.S. —, —, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994) ("[The United States Court of Military Appeals] has demonstrated its vigilance in checking any attempts to exert improper influence over military judges.").

I need not resolve this question for myself in this case, however. I am satisfied that the record as already established—though its full development was cut short by appellant's action—is entirely adequate to see what went on in the members' deliberation room. There is no margin in this system for such heavy-handed shenanigans, and they must be judicially stomped into oblivion whenever they appear.

As mentioned earlier, though, the fact of command influence, however condemnable, does not prompt judicial action in response where an appellate court is convinced beyond a reasonable doubt that the proceedings are free from prejudicial influence. Appellant was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade—no confinement, no fine, and no forfeitures. He almost sprinted to evade any possibility that his punitive discharge would be converted into *any* term of confinement. In this

posture and in the safe assumption that appellant's crime would result in a sentence at a rehearing that would contain something more onerous than mere reduction in grade, there is no doubt in my mind that appellant did not suffer prejudice from the unlawful command influence by the president of the court-martial during sentence deliberations.

Accordingly, as to Issue II, I join in affirming the decision below.

SULLIVAN, Chief Judge (dissenting):

I am not "convinced, beyond a reasonable doubt, that appellant's sentence was not tainted by undue command influence." 40 MJ at 202. *See United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Under the circumstances of this case, the judge should have declared a mistrial because substantial doubt existed as to the fairness of the proceedings. On appeal I cannot say with any degree of certainty that this jury panel was untainted by command influence. The affirmance of a conviction that may be tainted with command influence would be inconsistent with the very purpose of the creation of this Court by Congress.

Moreover, I would not find waiver by appellant where the military judge made clear that appellant would risk confinement if he chose to pursue this matter. *See generally United States v. Sparrow,* 33 MJ 139 (CMA 1991). The provision for rehearings in the Uniform Code of Military Justice (Art. 63, UCMJ, 10 USC § 863 (1983)) was not designed to discourage litigation of unlawful-command-influence issues. *See Waller v. Swift,* 30 MJ 139 (CMA 1990).

The record of trial in this case clearly established that appellant's potential waiver was not voluntary:

MJ: All right. Captain Swanton, do you want—what is your position right now, after hearing Captain Taylor's comments? Do you wish further investigation into this matter?

DC: No, sir, as Defense Counsel, I don't, and I believe my client, after I've spoken with Sergeant Reynolds, does not want any further investigation. In fact, would waive any further investigation and any finding that would result in that investigation.

MJ: And may I ask what was prompting his—I'll question him, but right now, what is prompting your client not to press forward with this matter? Do you feel that there is no basis for it at this point, or some other considerations?

DC: No, sir. In fact, I believe there is probably ample basis on two accounts, but in this particular case I've spoken with Sergeant Reynolds, he understands that, in fact, if you were to find that there was undue command influence, unlawful command influence and found that that was prejudicial that you, in fact, could order that there be a mistrial for sentencing. *Of course, if there were a mistrial for sentencing, Sergeant Reynolds understands there would be a new rehearing on sentencing involving new members.* And in that case he also understands that the maximum punishment that he could get would be the bad-conduct discharge and reduction to E–1 that he originally got, *but, also, he could end up getting six months or less in confinement in lieu of the bad-conduct discharge, and my client does not want to spend a day in prison—very simply put.*

MJ: Does the government wish or have any concerns or wishes to pursue this investigation any further in view of the accused's comments?

TC: No, Your Honor ...

MJ: All right. Sergeant Reynolds (standing)—you can remain seated. (Complied.) You have heard Captain Taylor and his testimony. Your counsel has indicated on your behalf that she does not request that I pursue the matter any further in terms of calling any other court members. Are those your desires?

ACC: Yes, Your Honor. I'm concerned about going [on] with my life.

MJ You're concerned about what, I'm sorry?

ACC: I'm concerned about what went on, but I—right now my most important thing is getting on with my life. It's kind of been put on hold for quite a while.

MJ: All right. I would like you to understand that this court could go ahead and call Major Smith and the other court members and, after having heard all those members, I would then be in a position whether I would have to make a decision of whether there was any undue command influence. And, obviously, I would allow your attorney and the government to present whatever evidence and argument they wished on that matter.

I could, as a result of the hearing, I could rule that there is no issue of unlawful command influence because of the president's actions in dealing with the other court members, in which case this case would then continue on in the normal process of the post-trial review of the case. On the other hand, I could rule that—yes, there has been unlawful command influence, and then the question would be, Sergeant Reynolds, what remedy are you entitled to.

One of those remedies could be me declaring a mistrial as to the sentence that you received. Do you understand that?

ACC: Yes, Your Honor.

MJ: A mistrial where there's been a manifest injustice to your rights and to your—the fairness of these proceedings. *As a result of that mistrial, then the convening authority could direct a rehearing on the sentence. Do you understand that?*

ACC: Yes, I do, Your Honor.

MJ: *Okay. Now, there are certain things that would happen at a rehearing.* As your counsel has indicated, the initial thing that would be a concern to you as to what possible sentence you could receive. The rules are quite clear that the sentence that you—the maximum sentence you could receive at a rehearing could not be any more severe than that already adjudged. In your particular case, that's a bad-conduct discharge and reduction to E-1—you received no confinement.

*However, at a rehearing the court members could adjudge a lesser sentence. And I believe the law is still clear that a period of confinement is less than a bad-conduct discharge.* So, while they could not give you both confinement and a discharge, they could give you confinement but no discharge, and I would instruct them on that, or whoever—judge held—had the rehearing would instruct them that they could not give you both, *but that they could give you confinement and no bad-conduct discharge or a bad-conduct discharge and no confinement.*

Do you understand that?

ACC: Yes.

MJ: Now, at this rehearing on sentence you would have certain rights, again, that you could exercise prior to that rehearing. One of those rights would be to decide whether you wanted to go with, again, officer members, or, if you wish, you could again request that at least one third of the members be enlisted personnel.

Do you remember those rights that we talked about before?

ACC: Yes, sir.

MJ: The same rights would apply to a rehearing. This would be a different court, by the way. It would not be the same members who sat and heard your case before. It would be a totally different court, and you could have enlisted members up to one-third. Or, you could request, again, trial by judge alone as far as sentencing goes, also, in which case I or another judge would then decide on what sentence you would receive.

Do you understand that?

ACC: Yes, Your Honor.

MJ: I suppose there is one other alternative, also. I suppose we could proceed through with investigating the entire matter and then you could just go ahead and waive any rehearing at all. That way we would—we would pin down and

have a judicial determination by me as to whether there was, in fact, any unlawful command influence and then you could say at that point—however, Your Honor, even though you've decided there is unlawful command influence, I don't want you to—I don't way any remedy, I want to let the case stand as it is. That's a possibility.

Would you want that one?

ACC: No, Your Honor.

MJ: And could I ask you—why not, again? What is motivating you right now? Why don't you want to pursue the matter any further and run the risk of a rehearing?

ACC: Well, Your Honor, I've been getting my resumes together, and, like I said, my life has been on hold for the last four months. And, with my wife being pregnant, I can't do her any good in jail, and at E–1 pay I can't very well support us. And I need to find a house, I need to find a job, and that right now is my most important issue.

(Emphasis added.)

Article 63 (1983) provides:

### § 863. Art. 63. Rehearings

Each rehearing under this chapter shall take place before a court-martial composed of members not members of the court-martial which first heard the case. Upon a rehearing the accused may not be tried for any offense of which he was found not guilty by the first court-martial, and *no sentence in excess of or more severe than the original sentence may be imposed*, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory. If the sentence approved after the first court-martial was in accordance with a pretrial agreement and the accused at the rehearing changes his plea with respect to the charges or specifications upon which the pretrial agreement was based, or otherwise does not comply with the pretrial agreement, the sentence as to those charges or specifications may include any punishment not in excess of

that lawfully adjudged at the first court-martial.

(Emphasis added.) RCM 810(d)(1), Manual for Courts–Martial, United States, 1984, also provides:

(d) *Sentence limitations.*

(1) *In general.* Except as otherwise provided in subsection (d)(2) of this rule, offenses on which a rehearing, new trial, or other trial has been ordered shall not be the basis for punishment *in excess of or more severe than the legal sentence adjudged at the previous trial or hearing*, as ultimately reduced by the convening or higher authority, unless the sentence prescribed for the offense is mandatory.

(Emphasis added.)

In my view these provisions were not designed to forestall investigations of unlawful command influence or discourage military accused from pursuing their rights to a fair court-martial. Moreover, I do not think this Court should be in the business of encouraging waivers of command-influence issues. *See Weiss v. United States,* —— U.S. ——, ——, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994) ("That court has demonstrated its vigilance in checking any attempts to exert improper influences over military judges."); *United States v. Sparrow,* 33 MJ 139 (CMA 1991). Accordingly, I dissent from the holding of waiver.

GIERKE, Judge (dissenting):

I disagree with the majority's resolution of both granted issues. Courts-martial must not only be fair; they must *appear* to be fair. Appellant's case falls far short on the appearance of fairness.

With regard to the first granted issue, I find defense counsel's failure to challenge the four affected members for cause inexplicable. There is no doubt that they should not have sat as members "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." RCM 912(f)(1)(N), Manual for Courts–Martial, United States, 1984. *Cf. United States v. Glenn,* 25 MJ 278 (CMA 1987) (court member's familial relationship with deputy staff judge advocate should have been disclosed to

preserve public confidence in fairness of trial); *United States v. Coffin,* 25 MJ 32 (CMA 1987) (court member who knew accused and had been present at formation where accused was apprehended and accused of being drug dealer "should not have sat" on case); *United States v. Smart,* 21 MJ 15 (CMA 1985) (court member who was multiple victim of similar crimes should not have sat on case).

While I do not doubt the sincerity or honesty of the members in their disclaimers regarding Colonel Hagelin's comments, the conflict between their personal interests and their sworn duty as court members demanded that they be excused in the interests of justice. If counsel would not challenge them, the military judge should have done so *sua sponte* or declared a mistrial. *See* RCM 912(f)(4) and RCM 915; *United States v. Brice,* 19 MJ 170 (CMA 1985) (interruption of court-martial for anti-drug lecture by Commandant of Marine Corps); *United States v. McCann,* 8 USCMA 675, 25 CMR 179 (1958) (lecture by staff judge advocate which discussed certain offenses, including offense charged against accused).

The failure of defense counsel to challenge the members or request a mistrial should not result in waiver in this case. This Court traditionally has not applied waiver for violations of Article 37, Uniform Code of Military Justice, 10 USC § 837. *See United States v. Blaylock,* 15 MJ 190, 193 (CMA 1983) ("In view of the policy clearly stated in Article 37, we have never allowed doctrines of waiver to prevent our considering claims of improper command control."). Furthermore, even under traditional waiver rules, the failure to remove the affected members or declare a mistrial was plain error. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (error is plain if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings").

I also disagree with the majority's disposition of the second granted issue on the grounds of waiver. A waiver must be knowing and intelligent. Appellant's purported waiver was based on the military judge's questionable advice that another trial could result in a sentence to confinement. In another context, this Court has viewed the comparative severity of sentences through the eyes of the accused and has held that any sentence to confinement may be more severe than a punitive discharge. *See Waller v. Swift,* 30 MJ 139 (CMA 1990). Under the circumstances of this case, I am not satisfied that appellant made a knowing and intelligent waiver of the command-influence issue.