UNITED STATES, Appellee

v.

Charles W. JOHNSON, Lieutenant
U.S. Navy, Appellant.

No. 96–0669.
Crim.App. No. 94–1674.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 4, 1997.

Decided July 7, 1997.

For Appellant: *Lieutenant Estela I. Velez,*
JAGC, USNR (argued).

For Appellee: *Lieutenant Kevin L. Flynn,*
JAGC, USNR (argued); *Colonel Charles
Wm. Dorman,* USMC, and *Commander D.H.
Myers,* JAGC, USN (on brief).

*Opinion of the Court*

COX, Chief Judge:

Pursuant to his pleas, appellant, a naval
officer and dentist, was convicted by a mili-
tary judge sitting as a general court-martial
at Camp Pendleton, California, of committing
oral sodomy upon his son, a child under the
age of 16 (2 specifications), taking indecent
liberties with his son by showing him porno-
graphic movies, and committing indecent acts
upon his son, violations of Articles 125 and
134, Uniform Code of Military Justice, 10
USC §§ 925 and 934, respectively. He was
sentenced to a dismissal and 3 years' confine-
ment. Pursuant to the terms of a pretrial
agreement, the convening authority suspend-
ed the confinement but approved the dismiss-
al.

Appellant appealed his approved sentence
to a dismissal to the Court of Criminal Ap-
peals, claiming that the post-trial procedures
were tainted by unlawful command influence.
The Court of Criminal Appeals rejected ap-
pellant's argument and affirmed his sentence.
Regarding the issue of unlawful command
influence, the court, in an unpublished opin-
ion dated January 31, 1996, stated:

Having reviewed the record, the affida-
vit from the appellant, and the affidavit
from the convening authority, we conclude
that the issue of command influence has
not been raised. We find that the com-
plained of circumstances in the appellant's
affidavit are either, (a) not relevant to

post-trial administration of the court-martial; (b) do not establish actual or apparent unlawful command influence if true; or, (c) are directly refuted by the convening authority's affidavit. In effect, the appellant makes "assertions or speculation without some supporting evidence...." *United States v. Allen,* 31 MJ 572, 590 (NMCMR 1990), *aff'd* 33 MJ 209 (CMA 1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

Unpub. op. at 1–2.

We respectfully disagree with the court below. This is a most unusual case. While appellant was pending trial by court-martial, his commanding officer, Captain J.L. Staiger, DC, USN, knowing the nature and extent of the charges against appellant, recommended to the convening authority, Major General R.D. Lynch, USMC, that any adjudged dismissal be suspended. Later, after appellant's conviction and sentence on December 6, 1993, Captain Staiger wrote the Chief of Naval Personnel on March 25, 1994, urging that appellant not be separated from the service because "his retention ... would be in the best interest of his family and in the best interest of the Navy."

Following these events, two apparently unrelated events took place. First, on May 13, 1994, Captain Becker, USN, legal counsel to the Chief of Naval Personnel, wrote a memorandum for the Deputy Chief of Naval Personnel concerning the Navy's policy of processing homosexuals for discharge. Significantly, this memorandum seems to confirm that the convening authority was going to remit or suspend appellant's sentence to a dismissal. Captain Becker said that "full commutation is expected" of appellant's sentence. This confidential memorandum was made public by an anonymous fax from a Department of Defense telephone number to the Washington Blade, a newspaper supporting rights for homosexuals.

The second event which took place was a change of convening authorities. Major General C.W. Reinke, USMC, assumed command from Major General Lynch in the summer of 1994, prior to action on appellant's court-martial.

A third event took place after the convening authority's action. According to appellant's unrebutted affidavit, he was told by his executive officer that his commanding officer, Captain Staiger, was pressured by "top down negative influences" to reverse his original position. Appellant also avers that Major General Reinke was open to a suspension of his dismissal, but that such action would require the support and endorsement of Captain Staiger, which was not forthcoming.

Thus, what we are left with in this record is at least the unrebutted, reasonable inferences that on or about May 13, 1994: the decision had been made by the original convening authority to commute (or suspend) appellant's sentence; this decision was not supported by superior command; a new convening authority entered the scene unaware of the prior decision to commute (or suspend) the sentence; appellant's commanding officer withdrew his support because of "top down command pressures"; and appellant's sentence to a dismissal was thereafter approved.

We believe that the inferences to be drawn from these uncontested facts are sufficient to require that appellant be afforded the opportunity to make his case that the decision to approve his dismissal was inappropriately influenced. *United States v. Thomas,* 22 MJ 388 (CMA 1986).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for a hearing to determine the facts and circumstances required to resolve the issues raised herein. *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

Judge EFFRON concurs.

SULLIVAN, Judge (concurring):

I concur with the majority in this command-influence case. We should not affirm a case where there exists an unresolved question of command influence on the record. The unrebutted sworn statement from appellant is that his executive officer "admitted in essence that several internal top down command pressures as well as external political and media interests were having a significant

bearing on the Navy to expedite [his] being separated as soon as possible." This statement, plus Chief Judge Cox's excellent rendition of the facts and the reasonable inferences to be drawn from them convince me that military justice requires a factfinding hearing in this case. *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967). I reject the dissent's unbelievably high threshold of proof of command influence—to wit: "Perhaps appellant would have a closer case if the Deputy Chief of Naval Personnel and the convening authority shared an office or, at least, a base, . . . ." 46 MJ at 256.

Command influence is normally a secret thing, not easily discovered and even if discovered, not easily admitted. Here, there exists enough unrebutted inferences and statements to send the case back to have a military justice evidentiary hearing to determine if prejudicial command influence tainted this case.

In working in this area of the law, a court must use its nose as well as its eyes to search for command influence. I would not say the dissent needs stronger reading glasses but perhaps they are suffering from a temporary nasal cold.

CRAWFORD, Judge (dissenting):

I dissent. Appellant has not carried his burden of showing that there was unlawful command influence.

## FACTS

After appellant's court-martial, his commanding officer, Captain Staiger, twice recommended to the convening authority that appellant's dismissal be suspended and that appellant not be administratively separated because "his retention . . . would be in the best interest of his family and in the best interest of the Navy." The defense claims that Captain Staiger later withdrew his recommendation, although there is no evidence of the withdrawal except for appellant's statements in his sworn declaration.

Prior to the convening authority's action, the Chief of Naval Personnel's legal counsel, Captain Becker, USN, wrote a memorandum to the Deputy Chief of Naval Personnel located in Washington, D.C. In that memorandum, Captain Becker advocated that child molesters who engage in homosexual conduct with children and adolescents "fall under mandatory processing for homosexual acts." The memorandum specifically mentions that appellant was expected to receive a "full commutation" from the convening authority.

The convening authority, Major General Reinke, based upon the pretrial agreement, suspended confinement for 2 years and ordered the execution of the sentence as adjudged with the exception of the dismissal and confinement. The convening authority was stationed at Camp Pendleton, California.

When appellant raised this issue, the convening authority provided an affidavit stating that he was "not influenced or even aware of" the internal advisory memorandum to the Deputy Chief of Naval Personnel. He further stated that he never indicated he would be willing to suspend appellant's dismissal if appellant's commanding officer personally endorsed the action.

In an unpublished opinion, the Court of Criminal Appeals found that appellant offered only assertions and speculation of command influence. Unpub. op. at 2. That court affirmed the findings and the sentence.

## DISCUSSION

It is axiomatic that command influence "strikes at the very heart of the system. Unlawful command influence undermines the integrity of the military justice system as well as of the commanders who are responsible for discipline within their units." *United States v. Weasler,* 43 MJ 15, 16 (1995). As we stated in *United States v. Ayala,* 43 MJ 296, 299 (1995):

The defense has the initial burden of producing sufficient evidence to raise unlawful command influence. *See Green v. Widdecke,* 19 USCMA 576, 579, 42 CMR 178, 181 (1970) ("[G]eneralized, unsupported claims of 'command control' will not suffice to create a justiciable issue."). As we said in *United States v. Johnston,* 39 MJ 242, 244 (1994), "[T]he threshold triggering further inquiry should be low, but it must be more than a bare allegation or

mere speculation." *See United States v. Allen*, 33 MJ 209, 212 (CMA 1991) ("Proof of [command influence] in the air, so to speak, will not do."), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

"[A]n appellant must (1) 'allege[ ] sufficient facts which, if true, constitute unlawful command influence'; (2) show that the proceedings were unfair; and (3) show that the unlawful command influence was the proximate cause of that unfairness." *United States v. Stombaugh*, 40 MJ 208, 213 (CMA 1994), quoting *United States v. Levite*, 25 MJ 334, 341 (CMA 1987)(Cox, J., concurring). "The burden of disproving the existence of unlawful command influence or proving that it did not affect the proceeding does not shift to the Government until the defense meets its burden of production." *Ayala*, 43 MJ at 299.

Appellant has not met his burden in this case. He has not even met the first prong of the test for command influence. Specifically, the internal memorandum directed to the Deputy Chief of Naval Personnel in Washington, D.C. could not have influenced the convening authority located at Camp Pendleton, California. Appellant has not shown that the convening authority was even aware of the document. In his affidavit, the convening authority specifically denies knowledge of the memorandum. Perhaps appellant would have a closer case if the Deputy Chief of Naval Personnel and the convening authority shared an office or, at least, a base, but they do not. As it stands, appellant has not even shown the appearance of unlawful command influence. Unless appellant can show that the convening authority's office somehow obtained that memorandum (for example, by someone faxing it to them, etc.), the facts are simply not sufficient to meet the first prong of the command-influence test.

Further, appellant alleges that Captain Staiger was pressured by command influence to withdraw his recommendation to the convening authority. Appellant submits he was told, "in essence," that internal pressures and political and media interests resulted in a change in the commanding officer's recommendation. Regardless whether this is true, there is no indication in the record that Captain Staiger withdrew the two letters of recommendation. In fact, the convening authority, Major General Reinke, specifically states in his affidavit that he considered Captain Staiger's recommendation to suspend the dismissal. The letter is attached to the staff judge advocate's (SJA) recommendation, and there is no mention of withdrawal of this document. Again, appellant has not alleged sufficient facts to meet the first prong of the command-influence test.

Even if appellant had met the first prong (and assuming the convening authority saw the memorandum), appellant is unable to meet the second prong of the test. The proceedings were not unfair. The memorandum was not addressed to the convening authority and, while it did address particular policies regarding homosexuals in the military and did speak of appellant's case, it did not add up to "command influence." The letter was to a captain in the Navy JAG Corps. The convening authority was a major general in the Marine Corps. Further, the convening authority approved the SJA's recommendation.

Appellant's sentence was extremely light considering his offense—sexual abuse of his 16–year–old son. Admittedly, there was overwhelming evidence of appellant's remorse and remarkable response to therapy. However, dismissal for this offense is not inappropriate or unfair or even uncommon. It would be a great surprise if the convening authority did not approve a dismissal, considering the obvious seriousness of appellant's offenses.

GIERKE, Judge (dissenting):

I agree with Judge Crawford that appellant has not presented enough evidence to raise the issue of unlawful command influence. In my view a remand based on appellant's unsupported speculation is unjustified. *See United States v. Ayala*, 43 MJ 296, 299 (1995), quoting *United States v. Johnston*, 39 MJ 242, 244 (1994) ("[T]he threshold triggering further inquiry should be low, but it must

be more than a bare allegation or mere speculation.").

There is no evidence that Captain (Capt) Staiger withdrew his support. To the contrary, his letter to Major General (MajGen) Lynch remained in the file and was considered by the successor convening authority. In his affidavit, MajGen Reinke expressly states that he considered Capt Staiger's recommendation for suspension of the dismissal.

There is no evidence that Capt Becker's views expressed in his memorandum to the Deputy Chief of Naval Personnel were adopted by anyone; no evidence that his views were communicated to the convening authority; and certainly no evidence that his views had any impact on the convening authority. To the contrary, MajGen Reinke's unrebutted affidavit asserts that he was unaware of the memorandum.

Although appellant asserts that MajGen Reinke would consider suspending the dismissal only if Capt Staiger would personally endorse such action to MajGen Reinke, that assertion is contradicted by MajGen Reinke's affidavit. Curiously, appellant does not support this assertion with an affidavit from Capt Gammell, the trial defense counsel who allegedly told appellant that an additional letter from Capt Staiger to MajGen Reinke would be necessary to obtain suspension of the dismissal.

I would affirm the decision of the court below.