UNITED STATES, Appellee,

v.

Charles W. JOHNSON, Lieutenant,
Dental Corps U.S. Navy,
Appellant.

No. 96–0669.
Crim.App. No. 94–1674.

U.S. Court of Appeals for
the Armed Forces.

Submitted Sept. 10, 1999.

Decided Aug. 31, 2000.

Sullivan, J., concurred in result and filed opinion.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and GIERKE and EFFRON, JJ., joined. SUL-

LIVAN, J., filed an opinion concurring in the result.

For Appellant: *Lieutenant Commander Robert C. Klant,* JAGC, USN.

For Appellee: *Colonel Kevin M. Sandkuhler,* USMC, *Commander Eugene E. Irvin,* JAGC, USN, and *Captain Danny R. Fields,* USMC.

Senior Judge COX delivered the opinion of the Court.

This case is before us for a second time, following an evidentiary hearing that we ordered to determine whether unlawful command influence played any role in the posttrial processing of the case. 46 MJ 253 (1997). On initial presentation to the Court of Criminal Appeals and to this Court, appellant raised a series of allegations suggesting that a variety of unlawful influences were brought to bear and that he was prejudiced thereby. Following a thorough review and oral argument, a majority of this Court agreed that appellant's allegations, and such other factors as then appeared, warranted at least a hearing to resolve the contentions. *Cf. United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

In due course, a military judge was appointed, and a *"DuBay"* hearing was convened to examine the evidence. The burden of establishing unlawful command influence fell on appellant. At the conclusion of the hearing, the military judge made extensive findings of fact, and he concluded that no improper influence occurred. Thereafter, the record was reviewed by the Court of Criminal Appeals, and in an unpublished opinion, it agreed with the military judge.

Upon appellant's petition, we grant review of the following issue:

WHETHER THE LOWER COURT ERRED IN FINDING THAT UNLAWFUL COMMAND INFLUENCE PLAYED NO ROLE IN THE POST-TRIAL PROCESSING OF APPELLANT'S CASE.

Upon reviewing the *DuBay* record, we hold that the lower courts did not err in conclud-

ing that unlawful command influence was not present in the case.

 As we noted in *United States v. Wallace*, 39 MJ 284, 286 (CMA 1994), "[w]here the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed [by us] under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this Court reviews *de novo*." The initial burden of raising evidence of command influence is on the defense. *United States v. Ayala*, 43 MJ 296, 299 (1995). However, "[p]roof of [command influence] in the air, so to speak, will not do." *United States v. Allen*, 33 MJ 209, 212 (CMA 1991). Once raised by evidence, "the appearance or existence of unlawful command influence creates a rebuttable presumption of prejudice." *Wallace, supra.*

There is no disagreement regarding the underlying facts. Appellant was a Navy dentist assigned to Naval Hospital, Camp Pendleton, California. He pleaded guilty, before a military judge sitting alone as a general court-martial, to two specifications of committing oral sodomy on his 15–year–old son and to one specification of taking indecent liberties with the son, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934.[1]

Essentially, appellant contends that the original convening authority was leaning toward suspending a dismissal, if adjudged,[2] and that appellant's immediate commander,

Captain (Capt) James L. Staiger, USN, the hospital commander, strongly supported such a suspension. However, due to a change of command, a new convening authority was in place at the time appellant's punitive discharges was approved, and Capt Staiger, over a period of months, changed his mind and did not go to bat for appellant. Appellant deduces that improper influences must have been brought to bear on Capt Staiger and, to a lesser extent, on the new convening authority, Major General (MajGen) Claude W. Reinke, USMC. There is no contention that MajGen Reinke was ever leaning towards suspending a dismissal, if adjudged.[3]

The *DuBay* judge received the depositions of both MajGen Reinke and Capt Staiger, as well as the depositions, testimony, and stipulations of numerous other witnesses, including the predecessor convening authority. In sum, the judge concluded that no improper communications occurred, and the Court of Criminal Appeals agreed.

 We need not recite at length the vast quantity of facts uncovered and reported by the *DuBay* judge. Being a court without factfinding authority,[4] suffice it to say that Capt Staiger, as hospital commander, wore at least three different hats regarding appellant. On the dental-practice side, there were issues of appellant's privileges at the hospital. A peer review was conducted, recommendations were made at the local level, and the matter was reviewed by authorities at the Naval Bureau of Medicine. Ultimately, the local recommendation was overruled,

---

1. As noted by the Court of Criminal Appeals in its most recent opinion in the case, our previous opinion stated that appellant was also convicted of a specification of committing indecent acts upon his son, in violation of Article 134, UCMJ, 10 USC § 934. This was incorrect. Although appellant pleaded guilty to such a specification, the military judge dismissed the specification as being multiplicious with one of the oral sodomy specifications.

2. It was stipulated by the parties at the *DuBay* hearing that the original convening authority, if called to testify, would deny that he "even considered that [suspending a dismissal] in light of the nature and severity of the offenses," and that he did "not recall saying that he would consider [it]." It was also stipulated that trial defense

counsel, if called as a witness, would testify that neither the original convening authority nor his legal advisors had "ever expressed to me that the convening authority had decided to suspend the dismissal or would promise to suspend the dismissal. I did not believe that myself or LT Johnson had an agreement with the convening authority that if awarded, a dismissal would be suspended."

3. At the point MajGen Reinke became involved in the case, the pretrial agreement had already been struck by his predecessor. MajGen Reinke considered the agreement "[v]ery lenient," and he asserted that he never had any thoughts about suspending a dismissal.

4. Art. 67(c), UCMJ, 10 USC § 867(c).

with the result that appellant was barred from practicing dentistry on minors pending disposition of the criminal charges.

Whether these medical-administrative matters were properly conducted, whether the various discussions that arose and opinions that were offered from the various corners of the Navy medical-dental community were appropriate, or whether the right conclusion regarding privileges was ultimately drawn, are not matters within our purview,[5] unless they spilled over to and affected the criminal justice aspect of the case. However, the facts, as found by the *DuBay* judge and amply based on the evidence adduced, are that the medical-administrative matters were handled entirely separate and apart from the matters on the criminal justice side. No evidence to the contrary is identified or proffered by appellant, nor have we discovered any in our own review. That appellant's personal conduct also triggered a dental-privileges action is not evidence of unlawful command influence on the criminal action.

■ The second administrative hat worn by Capt Staiger, as immediate commander, involved personnel matters. Suffice it to say, because appellant was alleged to have committed acts of a homosexual nature on his 15-year-old son, there were questions by many whether appellant should be processed administratively for homosexual conduct, or whether his case could be classified as an incest case and handled within family-advocacy channels. Again, a local judgment call was made that appellant could be handled within the family-advocacy program, a program that sometimes is able to rehabilitate perpetrators and address the needs of their families.

■ Again, the record reflects that there was activity up the personnel chain, and the appropriateness of the decision to handle appellant within the family-advocacy framework was questioned at levels as high as the Navy Personnel Bureau (BUPERS). It also hap-

pens that an internal BUPERS memorandum pertaining to the matter was apparently leaked by an unauthorized (and unknown) person to the press, and that the existence of the memo ultimately became known to Capt Staiger (but not to MajGen Reinke). Again, however, there is no evidence that anyone on the personnel side of the Navy contacted anyone on the military justice side. The fact that appellant's personal conduct triggered actions and opinions of a personnel-administrative nature did not demonstrate in this case that there was unlawful command influence on the criminal action.[6]

■ Appellant also complains that there was evidence that one or more members of the Naval Investigative Service involved in investigating appellant's case used the Inspector General of the Navy's hotline to express their concerns with the direction appellant's case was taking. Apparently, the agents were concerned that, notwithstanding his admissions, appellant was being allowed to continue the practice of dentistry on minors. The evidence adduced at the *DuBay* hearing suggests that the Inspector General requested information from various officials on the progress of both the criminal and administrative aspects of the case, but recognizing the command influence implications, he took no action and made no attempt to influence anyone. No evidence of improper command influence on the part of the Inspector General has been identified by appellant or discovered by us.

■ Another dry hole unearthed at the *DuBay* hearing was an *arguable* attempt by the Force Dental Officer, at the command above MajGen Reinke's, to influence his commander, the Commanding General, Fleet Marine Forces Pacific (FMFPAC), in order to insure that appellant's dismissal, if adjudged, was approved. The record reflects that the FMFPAC commander recognized the command influence implications and declined to get involved, and that he contacted

---

5. Hence our denial of review of the second assigned issue.

6. Art. 37(a), UCMJ, 10 USC § 837(a), prevents a convening authority or anyone else "subject to

this chapter" from unlawfully attempting to influence a court-martial. Press coverage does not constitute unlawful command influence.

no one. The Force Dental Officer's interest in the case was reported to MajGen Reinke, however, through the medium of the respective staff judge advocates, with the result that MajGen Reinke got "a little bit incensed" and declared that "I won't take a phone call if he [the FMFPAC commander] tries to call me." He did not. There is no evidence of record of an attempt by higher command to influence MajGen Reinke.

■ A final component of appellant's contention seems to be based on a chance meeting he and his wife had with the hospital executive officer (XO). According to appellant's wife, the XO indicated to them that the adverse publicity and the hotline complaint had caused the hospital commander, Capt Staiger, to bail out on supporting appellant.

The XO recalled having had one or more conversations with appellant, but he only vaguely recalled the content. He emphatically denied that adverse publicity, or hotline complaints, or other outside pressure had an impact on appellant's criminal case, or ever saying they would. He allowed, however, that adverse publicity can "have an impact on people's view of health care in any medical institution."

Capt Staiger explained that his support for appellant's retention in service began to wane after he got "a less favorable report" on appellant's progress from the Family Service Center, and indeed documentary evidence of such an adverse report was adduced

at the *DuBay* hearing. MajGen Reinke, as indicated, never seriously considered suspending appellant's dismissal.

In sum, no evidence of unlawful command influence was adduced at the *DuBay* hearing. Hence, the military judge's findings were not "clearly erroneous," and no presumption of prejudice arose.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in result):

I disagree with the majority's conclusion that "unlawful command influence was not present in this case." 54 MJ at 34. In my view, the *DuBay* hearing found only that any unlawful influence in this case did not prejudice appellant because it was ineffective, *i.e.*, "Not the product of unlawful command influence." (*DuBay* hearing Findings of Fact and Conclusions). *See United States v. Biagase*, 50 MJ 143, 151 (1999). I will not condone the unauthorized leaking of a government memorandum to the press by anonymous sources, particularly where it might adversely affect the court-martial approval process. *See United States v. Levite*, 25 MJ 334, 338 (CMA 1987); *United States v. Karlson*, 16 MJ 469, 474 (CMA 1983) (stating that "it is well established that unlawful command influence may assume many forms, may be difficult to uncover, and affects court members in unsuspecting ways").