IN THE CASE OF


UNITED STATES, Appellee

v.

Darrell R. Stirewalt, Health Services Technician Second Class
U.S. Coast Guard, Appellant

No. 03-0433

Crim. App. No. 1098

---

United States Court of Appeals for the Armed Forces

Argued April 27, 2004

Decided September 29, 2004

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined.  CRAWFORD, C.J., filed a
separate opinion concurring in part and in the result.

Counsel

For Appellant:  Lieutenant Commander Nancy J. Truax (argued);
Lieutenant Laurina M. Spolidoro.

For Appellee:  Lieutenant Sandra J. Miracle (argued); Lieutenant
Commander John S. Luce Jr.

Military Judge:  W. J. Dunaway

  **This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Health Services Technician Second Class (E-5) Darrell Stirewalt was convicted of a number of offenses involving his female shipmates. Before this Court Stirewalt argues that his prosecution was tainted with unlawful command influence, that the investigating officer had an impermissible conflict of interest and that his conviction for sodomy violated the Fifth Amendment. We affirm the decision of the Coast Guard Court of Criminal Appeals.

PROCEDURAL BACKGROUND

As this case has a long and complex procedural history, a brief review of that procedure is helpful in providing a contextual basis for this decision.

A.   The Initial Trial

Stirewalt was originally tried by a general court-martial and was convicted of four specifications of maltreatment by sexual harassment, one specification of rape, one specification of forcible sodomy, three specifications of assault consummated by a battery, four specifications of adultery and four specifications of indecent assault. Prior to sentencing, the military judge dismissed two specifications of maltreatment, two specifications of assault consummated by a battery and one specification of adultery. The members sentenced Stirewalt to a dishonorable discharge, ten years' confinement, forfeiture of

2

all pay and allowances and reduction to the lowest enlisted grade.

B.    The Initial Court of Criminal Appeals Appeal

Stirewalt's conviction and sentence were reviewed by the Coast Guard Court of Criminal Appeals under Article 66(c), Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 866(c) (2000).  The Court of Criminal Appeals found that the military judge had erred in excluding certain testimony under the "rape shield" provisions of Military Rule of Evidence 412.  See United States v. Stirewalt, 53 M.J. 582 (C.G. Ct. Crim. App. 2000).  As a result of that ruling, the court set aside the guilty findings for the offenses involving Stirewalt's female department head, which included rape, forcible sodomy, assault and battery and indecent assault.  The court affirmed the remaining guilty findings but set aside the sentence and authorized a rehearing.

C.    The Rehearing -- Motion to Dismiss

The case was returned to the convening authority for a rehearing on sentence and, if practicable, a rehearing on the charges that had been set aside.  The convening authority ultimately referred all of the charges that the Court of Criminal Appeals had set aside to a general court-martial for rehearing.

Based on evidence discovered after his first trial, Stirewalt moved to dismiss all of the charges referred for

3

retrial on the grounds of unlawful command influence.  Stirewalt contended that (1) the original decision to request an investigation of the charges pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2000) was tainted by unlawful command influence; (2) witnesses had been discouraged from coming forward on his behalf; (3) actions of the command had tainted the member pool; and (4) the Article 32 investigating officer lacked independence and later improperly acted as the staff judge advocate in providing advice on the case.

Although the military judge denied Stirewalt's motion to dismiss, he did order several remedial measures that he characterized as "necessary to ensure that the accused receives a fair trial and to restore the public confidence in the present case."  The military judge found no unlawful command influence in terms of the initial referral of the charges or any "taint" of the member pool, but he did conclude that the Government had failed to demonstrate beyond a reasonable doubt that improper interference with witnesses had not occurred.  He also found that the Article 32 investigating officer "was not aggressive enough in his attempts to shield himself from subsequent action on the same case that he served as the [investigating officer]."

In light of those conclusions the military judge ordered that certain steps be taken to ensure full access to witnesses by the defense and that the convening authority designate a new

place of trial.  He also ordered that the Article 32
investigating officer take no further steps with regard to the
case and remove himself from the rating chain of the assistant
trial counsel.

D.    Interlocutory Request for Extraordinary Relief

In response to the military judge's ruling, Stirewalt filed
a petition for a writ of mandamus with the Court of Criminal
Appeals.  He asked the court for an order either directing the
convening authority to withdraw and dismiss the charges on
grounds of unlawful command influence or, alternatively,
disqualifying the convening authority and appointing a
substitute convening authority.  The Court of Criminal Appeals
denied Stirewalt's petition and "approve[d] the military judge's
findings, his denial of the motion below, and the actions
ordered by him to facilitate a fair rehearing and to restore
public confidence in the case."  See Stirewalt v. Pluta, 54 M.J.
925, 927 (C.G. Ct. Crim. App. 2001).

E.    Rehearing and Disposition

The matter was returned for rehearing and Stirewalt elected
a trial by military judge alone.  In accordance with the terms
of a pretrial agreement, Stirewalt pleaded guilty in March 2001
to one specification of sodomy under Article 125, UCMJ, 10
U.S.C. § 925 (2000).  Pursuant to the pretrial agreement, the

Government dismissed with prejudice the rape, forcible sodomy, assault and indecent assault charges.

At that point, Stirewalt stood convicted of sexual harassment, adultery and indecent assault from his first trial and of sodomy from the rehearing. The military judge sentenced Stirewalt to 90 days' confinement, reduction in pay grade to E-4, and a reprimand. The convening authority approved the sentence.

F.   Second Court of Criminal Appeals Decision

The Court of Criminal Appeals again reviewed the matter under Article 66(c), UCMJ. Stirewalt raised seven assignments of error, six of which the court viewed as having already been addressed and disposed of in its earlier decisions in the case. See United States v. Stirewalt, 58 M.J. 552, 554 (C.G. Ct. Crim. App. 2003). The only "new" assignment of error involved a request by Stirewalt that credit for his "excess" confinement be applied against his adjudged reduction in rank. That claim was rejected on the basis of our decisions in United States v. Rosendahl, 53 M.J. 344 (C.A.A.F. 2000) and United States v. Josey, 58 M.J. 105 (C.A.A.F. 2003).

Stirewalt then petitioned this Court for review of his case under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2000). His defense counsel assigned six errors and he individually asserted

seven errors pursuant to United States v. Grostefon, 12 M.J. 431

(C.M.A. 1982).  We granted review of the following issues:

> I.   WHETHER A SUBORDINATE COMMANDER CAN BE SAID TO HAVE
> EXERCISED INDEPENDENT JUDGMENT WHEN THE COMMANDER'S THIRD
> LEVEL SUPERVISOR "FORCEFULLY" ADVISED THE COMMANDER THAT
> APPELLANT'S CHARGES WERE "TOO SERIOUS" TO BE HANDLED AT NJP
> OR SPECIAL COURT-MARTIAL AND "NEEDED TO BE HEARD . . . BY
> AN UNLIMITED TRIBUNAL."
>
> II.  WHETHER APPELLANT WAS PREJUDICED WHEN THE
> INVESTIGATING OFFICER VIOLATED UCMJ ARTICLE 6(c) AND R.C.M.
> 405(d)(1) BY PROVIDING EX PARTE ADVICE TO BOTH THE
> CONVENING AUTHORITY AND THE STAFF JUDGE ADVOCATE UPON
> REMAND FROM THE LOWER COURT.
>
> III. WHETHER APPELLANT'S CONVICTION FOR ADULT, CONSENSUAL
> SODOMY VIOLATES HIS VITAL INTEREST IN LIBERTY AND PRIVACY
> PROTECTED BY THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.

We find that Stirewalt's commander exercised independent

discretion in requesting an Article 32 investigation, that

Stirewalt was not prejudiced by the subsequent involvement of

the investigating officer in his case and that his conviction of

sodomy did not infringe on his liberty interest under the Due

Process Clause of the Fifth Amendment.

## DISCUSSION

A.   The Initial Investigation and Referral of Charges

Stirewalt served as the health services technician on the

USCGS SWEETGUM, a Coast Guard cutter under the command of

Lieutenant Commander Crawley.  Stirewalt argues that Lieutenant

Commander Crawley's decision to request an Article 32

investigation of the allegations and his subsequent decision to

7

recommend referral of the charges to a general court-martial were improperly influenced by the Chief of Staff for the Eighth Coast Guard District, Captain Prokop.

This contention was one of several claims of unlawful command influence that were litigated before the military judge at the rehearing and was addressed in the judge's "Essential Findings of Fact and Conclusions of Law." Where the issue of unlawful command influence has been litigated on the record, we review the military judge's findings of fact under a clearly erroneous standard. United States v. Johnson, 54 M.J. 32, 34 (C.A.A.F. 2000). The question of command influence flowing from those facts, however, is a question of law that we review de novo. Id.

The military judge found that the initial allegations of misconduct against Stirewalt were brought forward by three crewmembers. Upon learning of the allegations, Lieutenant Commander Crawley notified the Coast Guard Investigative Service (CGIS). An agent from CGIS was dispatched to the SWEETGUM within a day and had briefed Lieutenant Commander Crawley with his preliminary results within the week. Lieutenant Commander Crawley then contacted Captain Bohner, his immediate supervisor, who in turn contacted his supervisor, Captain Gerfin, the Eighth District Chief of Operations. These two officers ultimately

briefed Captain Prokop, the Eighth Coast Guard District Chief of Staff.

The military judge found that all four officers then participated in two telephone conferences concerning the allegations against Stirewalt. Lieutenant Commander Crawley told the other officers that he had informed CGIS of the allegations, that an investigation was ongoing and that he was considering his options for handling the situation.

The military judge found that Captain Prokop "very clearly and forcefully made his opinion known during the phone calls that the allegations were too serious to go to captain's mast and that they warranted an airing at an Article 32." He also found, however, that Captain Gerfin made it clear to Lieutenant Commander Crawley that the decision as to the disposition of the case was his to make.

The factual basis for Stirewalt's claim is the military judge's finding that Captain Prokop "very clearly and forcefully" expressed his opinion concerning the seriousness of the charges and the need for an Article 32 investigation. As recognized by the military judge, the legal significance of that statement must be assessed against the broader context in which it occurred.

The statement was made during discussions that were initiated by Lieutenant Commander Crawley, the subordinate

9

commander. There is nothing inherently suspect about an officer in Lieutenant Commander Crawley's position electing to consult with his chain of command concerning potential investigative and procedural options when faced with allegations of serious misconduct. Without Captain Prokop's statement, Crawley's actions would not have been considered irregular.

Neither Lieutenant Commander Crawley nor Captain Prokop had any specific recollection of the telephone conversation at issue. The only clear recollection of either the phone conversation or Captain Prokop's comment came from Captain Gerfin, an intermediate commander, who knew both Crawley and Prokop. Captain Gerfin did not view Captain Prokop's statement as constituting any constraint on Lieutenant Commander Crawley's discretion and testified that Crawley was "obviously" the decision maker in regard to the necessity of an Article 32 investigation.

The military judge recognized that Captain Prokop's statement, "viewed in a void" could be seen as unlawful command influence. That void was filled, however, with extensive fact-finding regarding the context in which it was made and a thorough legal analysis which resulted in the military judge's findings and conclusions that unlawful command influence had not occurred. We do not view the military judge's findings of fact on this issue as "clearly erroneous," nor do we view those facts

10

as supporting a de novo conclusion on our part that unlawful command influence flowed from those facts.  Johnson, 54 M.J. at 34.

B.    The Role of the Investigating Officer

Stirewalt asserts that he was prejudiced by the subsequent involvement of the original investigating officer in his court-martial rehearing process.  As with the first issue, this claim was litigated before the military judge at the rehearing and was addressed in his "Essential Findings of Fact and Conclusions of Law."

The facts underlying this claim are not disputed.  After Lieutenant Commander Crawley decided to proceed with an Article 32 investigation, the Eighth Coast Guard District identified Commander Baumgartner as a prospective investigating officer.  Commander Baumgartner did not serve in the Eighth District and, once identified, was properly appointed by Lieutenant Commander Crawley.  He subsequently presided over the Article 32 hearing process, completed a report of the investigation and forwarded it to Lieutenant Commander Crawley with a recommendation that the matter proceed to a general court-martial.

Unfortunately that was not the end of Commander Baumgartner's involvement in Stirewalt's court-martial.  He was subsequently transferred to the Eighth District legal office and was serving as the acting staff judge advocate (SJA) when

11

the Coast Guard Court of Criminal Appeals issued its initial decision reversing portions of Stirewalt's original conviction.

The military judge made the following findings of fact concerning the nature of Commander Baumgartner's subsequent involvement in Stirewalt's case:

- He attended and participated in a meeting with the Commander of the Eighth District where decisions were made concerning the case. He was present at the meeting because he, as the Article 32 investigating officer, knew the facts of the case.

- He was the acting SJA when asked to provide an opinion on whether the SJA should appeal the decision to CAAF.

- Several e-mails sent to and from Commander Baumgartner indicate that he served as the Eighth District legal office's point of contact for Stirewalt's case.

- He routinely held himself out as part of the Eighth District legal team in matters pertaining to Stirewalt's case by using the word "we."

- He supervised the assistant trial counsel and the law clerk who worked on Stirewalt's case.

- He had been responsible for some of the logistics in Stirewalt's case, including budget, assignment of counsel and docketing matters.

- He shared advice and information about the Stirewalt case with the senior legal officer at the Eighth District.

The military judge ultimately determined that "Commander Baumgartner was not aggressive enough in his attempts to shield himself from subsequent action on the same case that he served as the IO." He went on to order that Commander Baumgartner take no further action regarding the case and that he remove himself from the rating chain for the assistant trial counsel.

While the Court of Criminal Appeals recognized that Commander Baumgartner's actions "may constitute a departure from the requirements of Article 6(c), UCMJ, and [Rule for Courts-Martial 405 [R.C.M.]]," it found no prejudicial error. Based on the record before us, we agree with the Court of Criminal Appeals that Stirewalt has not established that he was prejudiced by the subsequent involvement of Commander Baumgartner.

There is no question that Commander Baumgartner's actions violated R.C.M. 405(d)(1). That rule unambiguously states that "[an] investigating officer is disqualified to act later in the same case in any other capacity." A violation of R.C.M. 405(d)(1), however, must be measured for prejudice and since Stirewalt has not established that he was prejudiced, he cannot prevail on this issue. United States v. Holt, 52 M.J. 173, 183-

13

84 (C.A.A.F. 1999)(actions of investigating officer inconsistent with R.C.M. 405(d)(1) measured for prejudice).

The question as to whether Commander Baumgartner's actions violated Article 6(c), UCMJ, is not quite as clear.  That provision states that no person who acts as a member, judge, counsel or investigating officer "may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case."  Id.  Stirewalt goes on to argue that prejudice can be "presumed" in the case of an Article 6(c) violation and relies on several older decisions from this Court.  See, e.g., United States v. Jolliff, 22 C.M.A. 95, 46 C.M.R. 95 (1973)(Article 32 investigating officer involved in preparing post-trial advice); United States v. Coulter, 3 C.M.A. 657, 659, 14 C.M.R. 75, 78 (1954)(trial counsel later serving as staff judge advocate for post-trial review).

In order to prevail under Article 6(c) Stirewalt must convince us that Article 6(c) is applicable to this factual situation and further, that where an Article 6(c) violation has been established, prejudice can be presumed.

As recognized by Stirewalt, this Court has not clearly determined whether the term "reviewing authority" in Article 6(c) applies to the activities of a convening authority throughout all stages of the court-martial process, or simply to the latter stages of the process where the convening authority

is engaged in "reviewing" the results of the court-martial. In United States v. Dodge, 13 C.M.A. 525, 527 n.1, 33 C.M.R. 57, 59 n.1 (1963) we noted that the term "reviewing authority" was used interchangeably with the term "convening authority" and assumed, for purposes of that case, that Article 6(c) would prohibit an investigating officer from subsequently acting as a staff judge advocate in preparing a pretrial advice.

Just two weeks later, however, we characterized a similar argument concerning the scope of the Article 6(c) prohibition as "pure speculation." United States v. Smith, 13 C.M.A. 553, 558, 33 C.M.R. 85, 90 (1963). We later characterized Article 6(c) as "on its face" applying to a staff judge advocate "acting for a reviewing authority" and rejected an argument that its application extended to a staff judge advocate preparing a pretrial advice for "a referring authority." United States v. Hardin, 7 M.J. 399, 403 n.3 (C.M.A. 1979).

We believe that the rationale in Hardin correctly reflects the intent of Article 6(c). The plain language of the provision states that it applies to a staff judge advocate acting for a reviewing authority. All of the instances where we have found violations of Article 6(c) involve subsequent actions for a reviewing authority. See, e.g., United States v. Edwards, 45 M.J. 114, 116 (C.A.A.F. 1996); Jolliff, 22 C.M.A. 95, 46 C.M.R. 95; United States v. Marsh, 20 C.M.A. 42, 42 C.M.R. 234 (1970);

15

United States v. Stirewalt, 03-0433/CG

United States v. Crunk, 4 C.M.A. 290, 15 C.M.R. 290 (1954);
Coulter, 3 C.M.A. 657, 14 C.M.R. 75.

When this matter was remanded, the options for the convening authority were limited by the appellate court to ordering a rehearing on findings and sentence, or a rehearing on sentence alone.  53 M.J. at 592.  The convening authority did not have the option of reassessing the sentence or any option which would trigger the type of "reviewing authority" functions referenced in Article 6(c).  By the very nature of the remand, Commander Baumgartner's subsequent involvement was limited to providing pre-trial advice rather than advice to a reviewing authority.

While we can envision situations where a case has been remanded to a convening authority with no such limitations, which may trigger the consideration of "reviewing authority" functions, that is not the situation here.  As Commander Baumgartner's subsequent participation in this case did not involve a "reviewing authority," Article 6(c) is not applicable to this factual situation and we need not address the issue as to whether prejudice is presumed under Article 6(c).

C.   Constitutionality of Sodomy Conviction

At his rehearing, Stirewalt entered a guilty plea and was convicted of one specification of sodomy under Article 125, UCMJ, 10 U.S.C. § 925 (2000).  He now contends that his guilty

plea and conviction should be set aside in light of the United States Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003).

The specification that Stirewalt stands convicted under originally alleged that he "did, at or near Mobile, Alabama, on or about 8 December 1996, commit sodomy with [LTJG B], by force and without the consent of [LTJG B]." He entered a guilty plea to this specification, with the words "by force and without the consent of [LTJG B]" excepted and withdrawn. The stipulation of fact underlying his guilty plea indicates that

> [o]n the late evening of 07 December 1996, HS2 Stirewalt and [LTJG B] spoke by phone. Near midnight of that evening, HS2 Stirewalt proceeded to her apartment complex . . . . After knocking on the front door, HS2 Stirewalt was allowed inside by [LTJG B], who at the time of entry, was on the telephone with a fellow Coast Guard officer, LTJG Heidi Rumazza. After entering the apartment, HS2 Stirewalt spoke to Ms. Rumazza for approximately one minute before handing the telephone back to [LTJG B]. [LTJG B] then hung the phone up, sat down on a chair in her living room and began conversing with HS2 Stirewalt. After approximately 20 minutes of conversation, [LTJG B] moved into her bedroom. HS2 Stirewalt followed her into her bedroom. HS2 Stirewalt climbed into bed with [LTJG B] and the two engaged in "sodomy."

We recently concluded in United States v. Marcum, 60 M.J. 198 (C.A.A.F. 2004), that constitutional challenges to Article 125 based on the Supreme Court's decision in Lawrence must be addressed on an as applied, case-by-case basis. We identified a tripartite framework for addressing Lawrence challenges within the military context:

17

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court?  Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in Lawrence?  539 U.S. at 578.  Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the Lawrence liberty interest?

Marcum, 60 M.J. at 206-07.

In regard to the first two prongs of this tripartite framework, we will assume without deciding that Stirewalt's conduct falls within the liberty interest identified by the Supreme Court and does not encompass behavior or factors outside the Lawrence analysis.  Stirewalt's conduct, however, squarely implicates the third prong of the framework.  That question asks whether there are "additional factors relevant solely in the military environment," not addressed by the Supreme Court, that "affect the reach and nature of the Lawrence liberty interest" in the context presented.  Id. at 207.  It is clear that such factors exist here.

Stirewalt's conduct with [LTJG B] was more than a personal consensual relationship in the privacy of an off-base apartment. At the time of this relationship, [LTJG B] was one of seven officers on the USCGC SWEETGUM, a cutter with a crew of only 42. The conduct in question occurred between a commissioned department head and her subordinate enlisted crew member:

> Romantic relationships between members are unacceptable when:  (1) Members have a supervisor and subordinate

18

United States v. Stirewalt, 03-0433/CG

> relationship . . ., or (2) Members are assigned to the same
> small shore unit (less than 60 members), or (3) Members are
> assigned to the same cutter . . . The nature of operations
> and personnel interactions on cutters and small shore units
> makes romantic relationships between members assigned to
> such units the equivalent of relationships in the chain of
> command and, therefore, unacceptable.  This policy applies
> regardless of rank, grade, or position.

Coast Guard Personnel Manual, para. 8.H.2.f. (change 26, 1988)

(Unacceptable Romantic Relationships).

"Coast Guard policy prohibits the following relationships or conduct, regardless of rank, grade, or position of the persons involved . . . Romantic relationships outside of marriage between commissioned officers and enlisted personnel." Id. at para. 8.H.2.g. (Prohibited Relationships). "Interpersonal relationships which raise even a perception of unfairness undermine good leadership and military discipline." Id. at para. 8.H.1.c. (Leadership and Military Discipline).

In Marcum, we noted that due to concern for military mission accomplishment, "servicemembers, as a general matter, do not share the same autonomy as civilians." Marcum, 60 M.J. at 206.  We consider Stirewalt's zone of autonomy and liberty interest in light of the established Coast Guard regulations and the clear military interests of discipline and order that they reflect.  Based on this analysis, we conclude that Stirewalt's conduct fell outside any protected liberty interest recognized in Lawrence and was appropriately regulated as a matter of

19

military discipline under Article 125.  The fact that Stirewalt

as the subordinate enlisted crew member was charged does not

alter the nature of the liberty interest at stake.  As a result,

Article 125 is constitutional as applied in the present case.

## DECISION

The decision of the United States Coast Guard Court of

Criminal Appeals is affirmed.

United States v. Stirewalt, No. 03-0433/CG

CRAWFORD, Chief Judge (concurring in part and in the result):

I agree with the result in this case but I "would reserve for another day the questions of whether and how Lawrence [v. Texas, 539 U.S. 558 (2003)] applies to the military."[1]  Like United States v. Marcum, "the factual differences between Lawrence and Appellant's case are striking" for the reasons mentioned by the majority as well as the circumstances surrounding the charges themselves.[2]  "Unlike the petitioners in Lawrence, who were both charged with, and convicted of, consensual sodomy without any evidence of force,"  there was "probable cause that Appellant committed the general offense described in Article 125 with the added element of force,"[3] notwithstanding the reversal of his first conviction.  Thus, this is not a case where there was no evidence of force whatsoever.  And as the majority notes, this case is one of the exceptions to Lawrence.[4]

---

[1] 60 M.J. 198, 212 (C.A.A.F. 2004)(Crawford, C.J. (dissenting on Issue I and concurring in the result on Issue III).

[2] Id.

[3] Id. at 214.

[4]  The present case does not "involve minors, it does not involve persons who might be injured or coerced who are situated in relationships where consent might not easily be refused." Lawrence, 539 U.S. at 578.

If the facts and circumstances of Appellant's case fit into one of the enumerated Lawrence exceptions, then it only logically follows that it is not necessary even to assume that the Lawrence constitutional analysis applies.

Thus, I concur in part and in the result.